DAWKINS, J.
The New Orleans Railway & Light Company sues the Ætna Fire Insurance Company, of Hartford, Conn., for the sum of $11,060.35, upon a fire insurance policy issued by that company and covering the plaintiff’s power plant situated in the square bounded by Water, Market, South Peters, and Richard streets, in the city of New Orleans, La. Plaintiff claims that damages to that extent were caused to its said property by fire originating in generator No. 2 in said plant, and without fault on its part.
Defendant admits the execution of the policy, but denies that the alleged damage was due to fire (except to the extent of $163.83), or that the loss was as large as claimed, and avers that whatever damage may have resulted was caused by an electrical current, for which, under the terms of the policy, it was not liable.
There was judgment in favor of plaintiff in the court below for the said sum of $163.83, and it has appealed.
It seems to be conceded that defendant is liable only for such damage as may have resulted from fire, independently of electricity; and defendant appears to concede that it is liable for such damage as may have resulted from fire, even though it may have been started or ignited by an electrical current or flame; The issue, therefore, is mainly of fact.
Opinion.
We quote the following clause from the policy:
“This policy shall cover any direct loss or damage caused by lightning (meaning thereby the commonly accepted use of the term ‘lightning,’ and in no case to include loss or damage by cyclone, tornado or windstorm), not exceeding the sum insured nor the interest of the insured in the property, and subject in all other respects to the terms and conditions of this policy, it being a condition of this contract that any loss or damage to dynamos, motors or other electrical appliances or devices such as may be caused by lightning or other electrical current, artificial or natural, is expressly excluded, unless fire ensues, and then to include loss or damage by fire only.”
The record presents quite a mass of technical and expert testimony. We have gone over it carefully, together with the photographs and other exhibits, and find the facts, as well as we are able to determine, in plain terms, about as follows:
At about 6:05 o’clock on the morning of October 12, 1912, the attention of the employés of the plaintiff company, on duty at the time, was attracted to óne of its electrical generators (No. 2) in its main power house, by a loud report, and immediately they discovered that this generator had the appearance of a revolving pin wheel of fire; that those in charge, with reasonable promptness, threw and pulled the switches and levers which were designed to control the currents of electricity going into the machine, cut off the steam engine by which it was being propelled, and used chemicals and sand in an effort to extinguish the fire; that for some time the machine kept revolving, the fire kept burning, and, within a few minutes after the trouble was discovered, the engine which propelled generator No. 3 (which was connected in series with No. 2) was stopped; and that this produced quite an appreciable effect upon the fire in No. 2; but that the fire continued to burn or smoulder thereafter for some 20 or 30 minutes.
It appears beyond question that a short circuit or similar trouble occurred in generator No. 2, which produced a high-powered current, accompanied by extreme heat and. electrical arcs or flames; and that when this current had increased to 5,800 amperes, at which the automatic circuit breakers' were *85 set, the same were blown out, and this was what caused the loud report which attracted the attention of those in charge.
There is no doubt but that the machine was badly damaged, to the extent of several thousand dollars, necessitating its being largely rebuilt. Plaintiff claims that the loss which was due primarily to electric current was comparatively small, about $500; that when the short circuit occurred, due to the grounding of a wire or similar trouble, only two comparatively small spots upon the machine were affected; and that its employés stopped the machinery and cut off the current in time to have prevented any further damage, had it not been for the fact that the intense heat from the electrical arc or flame had set' fire to a wooden stairway and platform in the pit occupied by the lower half of this generator, which woodwork continued to burn long after the current had ceased to flow in the machine, and, according to plaintiff’s theory, did the major portion of the damage to the generator from the outside.
[1] The opinions and conclusions of the experts and electricians sworn on behalf of plaintiff coincide largely with the contention made by it; while those of defendant support its claims. So we must look finally to the homely facts and circumstances in the case, as they tend to corroborate or dispute these contentions, in our effort to ascertain the truth. Of course, the burden is upon the plaintiff to show that the loss falls within the terms of the policy.
Plaintiff’s own witnesses, present at the time, say that, immediately following the explosion, the generator became a mass of fire, and the heat at once became intense. We quote from the testimony of witness John J.- Engert, on cross-examination, beginning on page 19 of the record, as follows:
“Q. Now, after you notice (d) that the circuit breakers opened, what did you see about this generator?
“A. When the circuit breakers opened I saw a mass of flame; the armature fire shot out in all directions; the field magnets began to burn and the armature. In fact, the whole machine was one mass of flame. That is the only way I can express it.
“Q. How fast was this armature of the generator revolving?
“A. At 75.
“Q. Do you mean 75 revolutions a minute?
“A. Yes, sir; 75 revolutions a minute.
“Q. 'When you first saw this thing, it was like a big arc light?
“A. Well, all I know is I saw a mass of flames, and I wanted to get it out as quick as possible. I ordered everything stopped. I didn’t have time to stand there long, and all I. can say is it was a big mass of flames. I had to run and shut it down and attend the other auxiliaries, and it kept me busy to get things straight.”
[2] Generator No. 2 was a large circular piece of machinery, between 20 and 25 feet over all in diameter, the outer shell or circumference of which was stationary, with a revolving inner wheel or armature some 2 or 3 feet less in diameter. The field magnets or potential sources of magnetism were located at close intervals around the inside of this stationary structure or circumference, and the armature or inner wheel, with its copper bars revolving between the magnets, formed the exciting instrument for cutting the magnetic lines and generating the electric current. The armature was constructed upon a horizontal shaft supported by bearings resting upon the concrete floor on either side of a pit some 10 or 12 feet deep, and something less than half the entire machine extended' down into this concrete pit. On one side of generator No. 2 wooden steps, consisting of 1" x 12" boards about 2 feet long, supported by wooden beams, also extended down into the pit, to a platform some 6 or 8 feet below the surface of the floor, which platform was also made of wood. After the fire was finally extinguished, it was found that the surface of these steps and platform were charred to a depth of about one-fourth of an inch, and *87 that different ones went down on the steps and stood on the platform after the fire was extinguished. Plaintiff contends that oil had been thrown by the revolving machinery upon this wooden structure, and that it had become easily inflammable at the time of the trouble; but some of its own witnesses testified that the woodwork was scrubbed off daily, and this particular machine had been running only about five minutes when the explosion occurred. Under those circumstances, it seems that it would have been rather difficult to ignite the platform and steps with a sustained fire sufficiently hot to have damaged the machine to the extent which was done, and at the same time do such little damage to the wooden structure itself. From a practical standpoint, in the light of the description given by the witnesses, of the “pinwheel of fire,” it seems more probable that the heat from the electric arc or flames burned and charred the wood. This is further corroborated by the fact that the field magnets and other stationary parts of the machine on the upper side and some 10 or 15 feet away from the steps and platform were equally as badly damaged as those below in immediate contact with any fire that might spring from the woodwork. On the other hand, the arcs or electric flames, which concededly were of intense heat so long as they lasted, were revolving around the circumference of the machine in direct contact with the field magnets, rendering it easily possible to do the damage, which resulted to those portions of the machinery, at least. The expert testimony further tends to show that, under proper conditions, it would require only a very few seconds for heat produced by a short circuit to become sufficiently intense to burn and melt the insulation and to take the temper out of the copper bars, which constituted the major portion of the damage to generator No. 2.
In conclusion, we will add that we are presented with a situation very much the same as would exist if we were dealing with a case involving the sciences of medicine and surgery, for many of the terms used and effects of the operations of this highly technical piece of machinery require a close and long study of those other three branches of science known as “magnetism,” “electricity,” and “mechanics.” The experts differ in their opinions, and we accept the conclusions of those who seem to be corroborated by the simple facts and circumstances. Our view is that the contention of the defendant is supported by the weight of the evidence, and that the plaintiff has therefore failed to make out its case.
For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.