NATIONAL CASUALTY CO. v. UNION INDEMNITY CO. ET AL.

—

(January 13, 1930. Opinion and Decree.)
(February 17, 1930. Rehearing Refused.)
(March 10 1930. Writ of Certiorari and Review Refused by Supreme Court.)

—

W. A. Porteous, Jr., of New Orleans, attorney for plaintiff, appellee.

Manning W. Heard and W. W. Ogden, of New Orleans, attorneys for defendants, appellants.

HIGGINS, J. This is a suit in which plaintiff seeks to recover of defendant $2,000 under a fidelity bond, by which the defendant undertook to indemnify plaintiff against loss by reason of "any act of larceny or embezzlement directly or through connivance with others, committed, during the continuance of this bond" by J. P. Higgins, Jr., manager of plaintiff's southern department.

Defendant denied liability upon the ground that Higgins had not been guilty of any act of embezzlement or larceny within the provisions of its bond and in the alternative that the plaintiff had not complied with the provisions of the bond in that it failed to give proper notice of the alleged defalcation of its employee, Higgins, and that proper audit of the books of account of its employee, Higgins, was not made at proper intervals as required by the provisions of the bond. There was judgment in favor of plaintiff and defendant has appealed.

We will consider the defenses in the above order.

The original petition alleged that the loss was the result of larceny or embezzlement of the plaintiff's funds by the employee, Higgins, but in the supplemental petition, it was charged that the loss was the result of the act of larceny or embezzlement directly or through connivance with others by the employee, Higgins. Plaintiff, therefore, bore the burden of proving that it sustained a loss as a result of Higgins' stealing or embezzling its funds, directly, or stealing or embezzling its funds through connivance with others.

The record shows that J. P. Higgins, Jr., and B. Simon Titus were the company's original representatives under the name of Higgins-Titus Company, Inc. In 1923 the contract between the plaintiff and Higgins-Titus Company, Inc., was cancelled because plaintiff was not satisfied with the questionable actions of Titus in the handling of the company's business. The fact that the company did not care to have any further contractual relation with Titus was made known to Higgins. However, the company offered Higgins a contract individually, with the understanding that Titus was to have nothing to do with the company's business. As Higgins was to handle the company's funds it required him to give a bond. The bond sued upon was furnished by Higgins.

Higgins undertook the company's business in accordance with his individual contract, but then accepted employment selling printer's ink, which required him to travel a considerable bit, with the result that he was away from New Orleans a great part of the time. As Titus was familiar with the handling of the business of the plaintiff, Higgins entered into a written contract with Titus whereby Titus was to run the business for Higgins and credit him with one-half of the net earnings of the business. It appears that Higgins owed Titus certain money and that Higgins' one-half of the earnings was to be credited against the amount that the said Higgins owed Titus. Higgins left a number of letterheads and drafts, signed in blank, with Titus which were replenished from time to time, with the result that Titus operated the business for very nearly two years without the plaintiff knowing that Titus was handling its affairs in the south-

ern district. In October, 1925, plaintiff became suspicious of the dealings of this agency and decided to investigate in order to determine if everything was in proper order.

Plaintiff wrote Higgins a letter telling him that they understood that he was not actively in charge of their business in the southern district but that Titus was handling it for him. Higgins answered this letter denying these facts.

Plaintiff then sent John P. Collins, its auditor, to New Orleans during the latter part of December, 1925, to make an audit and investigate the company's affairs which were being handled by Higgins. Collins found Titus in charge of the office and his investigation revealed the secret agreement and working arrangement for the handling of the company's business. The audit showed a shortage existed in the agency which amounted to $3312.72. This audit was begun on January 2, 1926, and completed on January 9, 1926. As soon as the shortage was revealed plaintiff notified the defendant bonding company.

It is not urged that Higgins committed any act of larceny. Plaintiff earnestly insists that Higgins directly or indirectly committed embezzlement. Embezzlement is defined as follows:

"Embezzlement is the fraudulent appropriation of property by a person to whom such" property "has been intrusted, or into whose hands it has lawfully come." Moore v. United States, 160 U. S. 268, 16 Sup. Ct. 294, 40 L. Ed. 422; State v. Roubles, 43 La. Ann. 200, 9 So. 435, 26 Am. St. Rep. 179; Union Nat. Bank v. United States Fidelity & Guaranty Co., 143 La. 329, 78 So. 582. State v. Dudenhefer, 122 La. 288, 7 So. 614.

The evidence shows that the funds of the plaintiff were diverted by Titus, during Higgins' absence and so far as the record indicates without his knowledge and consent. The fact that Higgins absented himself from his employment and made it possible for Titus to convert the funds of plaintiff to his own use, may reflect upon his business judgment and may convict him of neglect of his employer's affairs, which would give rise to a civil action against Higgins for breach of his contract. There is no evidence tending to prove that Higgins, its employee, was guilty of larceny or embezzlement either singly or in conjunction or in conspiracy with others.

Higgins in retaining Titus against the advice and instructions of his employer was guilty of disobedience and when he wrote, denying that Titus was in his office, he was guilty of deception, but bad judgment, neglect, disobedience and deception do not singly or in combination, amount to larceny or embezzlement, nor can it be said that such derelictions of duty amount to a connivance with Titus in the commission of the crime of larceny or embezzlement.

We are referred to Delaware State Bank v. Cotten, 170 Pac. 992, where it was held that in order to recover on a surety bond indemnifying a bank against loss due to "fraud or dishonesty of its cashier amounting to embezzlement or larceny" it is unnecessary to establish the fraud or dishonesty of the cashier to the extent necessary in a criminal prosecution. This case is not apposite here for the reason that in the case at bar the bond sued on is not worded as broadly as in the cited case and for the further reason that there is no proof of any fraud or dishonesty on the part of Higgins.

To extend defendant's liability to the point necessary for plaintiff to recover in this action, would be to interpolate clauses enlarging upon the express liability in the

bond and to re-write the contract between the parties.

The view we entertain on this point, makes it unnecessary to consider the alternative defenses.

For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered, adjudged, and decreed that there be judgment in favor of the defendant, Union Indemnity Company, dismissing plaintiff's suit at its cost.