## CRESCENT CIGAR & TOBACCO CO. v. NATIONAL CASUALTY CO.*

### No. 14738.

Court of Appeal of Louisiana. Orleans.
June 11, 1934.

Rehearing Denied June 28, 1934.

Deutsch & Kerrigan & Burke, of New Orleans, for appellant.

Deynoodt & De La Vergne, of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff, Crescent Cigar & Tobacco Company, a corporation engaged in the sale of merchandise, employed Lester Bunch as a "peddler" or traveling salesman, furnishing to him a stock of merchandise and an automobile truck. At the end of each day Bunch was required to return to the office or warehouse of plaintiff company and to surrender such cash as he had received during the day and to replenish his stock in accordance with his anticipated needs.

After several months an inventory and a complete accounting was had, and it then developed that the said Bunch had failed to account for merchandise for which, if sold, he should have received the additional sum of $291.97.

National Casualty Company, defendant, had issued to the plaintiff a fidelity bond which contained a paragraph reading as follows:

"The National Casualty Company, as surety, binds itself to pay to the Crescent Cigar & Tobacco Company, as employer, such pecuniary loss as the employer shall have sustained of money or other personal property (including that for which the employer is responsible) through any act or acts of Fraud, Dishonesty, Forgery, Theft, Embezzlement, Wrongful Abstraction or Willful Misapplication committed by any employee of the employer occupying any position named in the notice of acceptance attached or subsequently added hereto and hereby made a part of this bond, directly or through connivance with others subsequent to the date specified in said notice of acceptance, etc."

Plaintiff contends that the loss thus sus-

tained was the result of one of the acts against which the said policy or bond was issued, and which said acts are set forth in the above-quoted paragraph of the bond.

Defendant denies that the loss resulted from one of the said risks.

In the district court there was judgment against the insurer, and it has appealed. Plaintiff-appellee also complains of the judgment charging that there should have been an additional award for attorney's fees and for the penalty permitted under Act No. 37 of 1921 (Ex. Sess.).

■ Plaintiff, declaring that there is necessity for interpreting the language of the above-quoted paragraph of the bond, calls our attention to many authorities holding that where, in a policy of insurance, there is ambiguity, doubt as to the interpretation should be resolved in favor of the insured and against the insurer, because of the fact that such policies are prepared by the insurers. But there is no necessity for an interpretation of this bond or policy. We find no ambiguity in it. It very plainly specified the various acts against the risk of loss by which the insurer agrees to indemnify the insured. Those acts are fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication.

The question thus is whether the loss sustained here was caused by one or more of the said specified acts.

There is in the record no evidence whatever as to how the shortage occurred. Bunch denies that he, himself, took any of his employer's goods or money. He cannot account for the shortage, and claims that he knew nothing about it until it was discovered as a result of the inventory and audit.

The employer offered no proof that there was any dishonest act on the part of Bunch, but maintains that there was no way in which any of the articles could have been abstracted from the truck by any third person; that the goods could not have been lost or destroyed; and that, consequently, in the absence of any explanation it must be presumed that there was some unlawful act on the part of Bunch; some such act as is specified in the policy.

Thus an analysis of the argument on behalf of plaintiff shows that no contention is made that the bond offered protection against anything other than a willfully wrongful act of the employee, and the theory on which plaintiff hopes to recover is that there is no other possible conclusion from the evidence than that the shortage results from such willful, fraudulent, unlawful acts.

Our brother of the district court adopted this view, and said:

" * * * The proof is absolute that of the $8600.00 worth of merchandise entrusted to Bunch, he failed to account for $291.97 thereof, and it seems to me that the conclusion and presumption, juris et de jure, is that he converted that to his own use or embezzled it."

■■ Our inability to agree with this view results from two propositions of law: First, that a policy which insures against dishonest acts affords no protection against loss resulting from carelessness, noncriminal stock shortages, or other losses not due to dishonesty; and, second, that the burden of showing that the loss occurred as the result of one of the risks insured against is on him who claims under the policy.

The proposition that a policy such as this affords no protection against unexplained stock shortages nor against carelessness of the employee, nor, in fact, against anything other 'than dishonest acts, is firmly established.

Salley v. Globe Indemnity Company, 133 S. C. 342, 131 S. E. 616, 617, 43 A. L. R. 971, is a much cited case on the subject. We quote from the decision in that case:

"The words in the bond are 'fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, or willful misapplication.' It is plain that mere negligence or carelessness will not be sufficient to hold the surety under this bond. This is apparent from even a casual reading of the words. The language used implies positive acts of wrongdoing. The authorities are equally as positive and to the point. Thus a loss resulting from the employee's carelessness or inattention to business, or other acts or omissions, not fraudulent or dishonest, imposes no liability on the insurer.' 25 Corpus Juris, pp. 1093, 1094; Monongahela Coal Co. v. Fidelity & Deposit Co., 94 F. 732, 36 C. C. A. 444; State Bank v. Hartford Accident, etc., Co., 28 Pa. Dist. R. 847; Sinclair v. National Surety Co., 107 N. W. 184, 132 Iowa, 549; Kansas Flour Mills Co. v. American Surety Co., 158 P. 1118, 98 Kan. 618. 'Surety bond, indemnifying principal against loss sustained by fraud or misapplication of agent, does not extend to loss by simple mistake of agent without fraud in paying for merchandise.' Kansas Flour Mills Co. v. American Surety Co., 158 P. 1118, 98 Kan. 618. 'Where a fidelity bond insured the obligee as principal against loss through

the personal dishonesty of its factor, the mere failure of the factor to turn over to the principal on demand property belonging to him, or the proceeds thereof, is not a breach of the bond rendering the surety company liable.' Sinclair v. National Surety Co., 107 N. W. 184, 132 Iowa, 549. There are more cases to the same effect cited on pages 1094 and 1095 of volume 25 of Corpus Juris."

In Louis Pizitz Dry Goods Company v. Fidelity & Deposit Company, 223 Ala. 385, 136 So. 800; Seelbinder v. American Surety Company, 155 Miss. 21, 119 So. 357, and Humbird Cheese Company v. Fristad, 208 Wis. 283, 242 N. W. 158, there were considered claims on bonds containing identically or strikingly similar language. In each of the said cases the loss had resulted from mistake on the part of the employee, which mistake had not amounted to a criminal act nor to an act of intentional dishonesty. In each of them it was held that there could be no recovery under such a policy as is involved here.

In Massachusetts Bonding & Insurance Company v. Raskin, 43 Ga. App. 582, 159 S. E. 778, 779, is found a case which in legal principle cannot be distinguished from the case before us. There the employer had intrusted merchandise to the employee. All but about $600 had been accounted for. The employer, in a suit against the insurance company, alleged a failure to return or account for a certain portion of the merchandise. The employee admitted that there was a shortage, and that he could not account for it. To the suit of the insured the insurer filed a general demurrer, contending that there should have been an allegation that the shortage resulted from a willfully unlawful act on the part of the employee. The court said:

"The contract under consideration covers only such losses to the employer as arise 'by any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction or willful misapplication on the part of the employee.' The offenses mentioned involve moral turpitude. Dishonesty certainly carries with it the idea of a willful wrong, and, in our opinion, the same is true of 'wrongful abstraction' and 'willful misapplication.' In short, any act or conduct which makes the company liable under the contract connotes willful wrong, and not merely an innocent mistake, or negligence. It is true, under the allegations of the petition as amended, that the employer intrusted the goods to the employee; that the latter was short in his accounting in the sum of $618.78; that the employee admitted liability; and

that such shortage 'arose by reason of the failure of the said Rosenthal to return to petitioners monies, goods, and merchandise sold or withdrawn by him from the stock while it was in his possession, custody, or control.'

"As we view the petition, the pleader studiously avoids averring any willful, wrongful conduct or act on the part of the employee. In our opinion, the alternative allegation contained in the clause last above quoted from the amendment to the petition is insufficient to make out a case. Therefore we hold that the trial judge erred in overruling the demurrer to the petition as amended."

We think the reasoning is sound.

Several cases are cited by counsel for plaintiff as authority for the view that a bond or policy such as this affords coverage against loss caused by acts not criminal. For instance, much reliance is placed on Union Pacific Tea Company v. Union Surety & Guar. Co., 43 Misc. 50, 86 N. Y. S. 466. While it is true that that decision holds that the evidence in a suit on a bond or policy need not be such as would justify a conviction in a criminal case, nevertheless, there must be proof of a dishonest act.

In the brief of counsel for the plaintiff we find the following:

"The intention and the object of Crescent Cigar & Tobacco Company was to be indemnified in the event that Lester Bunch should fail to account to it for money or merchandise which had been entrusted to his fidelity. The bond obtained was for the purpose of covering any deficiency or shortage, as well as to cover his honesty, integrity, and as a matter of fact to cover anything that might be entrusted to him, which was under his absolute control."

It may have been the intention of the officials of the plaintiff company to obtain such a bond, but if so they were obviously careless in the examination of the bond they actually received, and which manifestly affords no such protection.

With reference to the burden of proof in such cases, in National Casualty Company v. Union Indemnity Company, 14 La. App. 450, 131 So. 682, we held that an employer suing on a fidelity bond must bear the burden of proving that the loss resulted from one of the risks specified in the bond.

See, also, Grand Lodge v. Massachusetts Bonding & Insurance Company, 324 Mo. 938, 25 S.W.(2d) 783.

It has often been held that where a policy of insurance is issued (and a fidelity bond is

508

nothing more or less than an insurance policy) and the policy protects against loss due to certain specified acts, the primary burden is on the plaintiff to show that the loss resulted from one of the specified acts.

In New Orleans Railway & Light Company v. Ætna Fire Insurance Company, 145 La. 82, 81 So. 764, 765, our Supreme Court said:

"Of course, the burden is upon the plaintiff to show that the loss falls within the terms of the policy."

In Corpus Juris, volume 33, Verbum "Insurance," § 832, p. 111, it is stated that:

"The burden is on plaintiff to prove that the loss or injury sued for was due to a risk or cause which was insured against."

See, also, Leon Hochstein v. American Automobile Insurance Company, No. 8240 (see Louisiana and Southern Digest); Gulf Finance & Securities Company v. Atlas Assurance Company, 5 La. App. 91.

That the burden of proof rests upon him who claims under such a bond or policy was recognized in the district court when the judge, to whom the case was first allotted, in ruling on an exception of no cause of action, said:

"Since by its contract the defendant is bound to indemnify the plaintiff only for 'such pecuniary loss as the employer (plaintiff) shall have sustained * * * through any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication * * * committed by the plaintiff's employee—and applying the rule of strict construction against the petitions—and since I do not find in the petitions any distinct allegation of loss so arising, I hold that a cause of action is not stated against the defendant with sufficient distinctness. Leave to amend within 10 days is granted; and in default of adequate amendment in conformity with these views the exception of no cause of action will be maintained."

▉▉ Therefore, since the burden is on the plaintiff to show that the loss resulted from some dishonest act of Bunch's, there manifestly can be no recovery under the evidence found in this record, unless it can be said that though the evidence does not affirmatively show such an act it excludes any other reasonable hypothesis. This was the view of the district judge who decided the case on the merits.

We do not think, however, that from this record it would be fair to brand this employee as an embezzler or to say that the shortage resulted from a dishonest act on his part, and that is what we must do to render a judgment for plaintiff, for, though it is not necessary that there be evidence which would be sufficient to convict in a criminal case, it is necessary that we reach the conclusion that there was a willful misapplication of funds or a wrongful abstraction of property, or there can be no recovery. The merchandise may have been stolen, it may have been lost. Bunch may have made an error in giving to some customer more than he should have received. He may have made a mistake in making change. It is true that an attempt was made to prove that Bunch kept the truck at all times under lock and key and that, therefore, no third person could have stolen the articles, but the witness who testified to this showed plainly that he had seen the truck only very infrequently, and his evidence has no probative force. Improbable as a legitimate shortage appears, still we think that the evidence does not exclude the possibility thereof with sufficient certainty.

▉ There can be no presumption of dishonesty. In fact, in the absence of proof to the contrary, it is to be presumed that all persons are honest.

In Baillie & Co. v. Western Assurance Company of Toronto, 49 La. Ann. 658, 21 So. 736, 737, the Supreme Court said:

"Fraud is never to be presumed from acts which may be accounted for on the basis of honesty and good faith."

We conclude that the judgment of the district court is erroneous.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of defendant dismissing plaintiff's suit at its cost.

Reversed.