UNITED STATES FIDELITY & GUARANTY COMPANY *v.*
E. CONSTANTIN, JR., et al., d. b. a.
THE SOUTHLAND COMPANY

No. 42741 November 18, 1963 157 So. 2d 642

*Satterfield, Shell, Williams & Buford, Cary E. Bufkin,* Jackson, for appellant.

*Wells, Thomas & Wells,* Jackson, for appellees.

LEE, P. J.

E. Constantin, Jr., and others, doing business as the Southland Company, sued United States Fidelity & Guaranty Company, under the provisions of a fidelity bond, to recover certain losses due to the alleged dishonest and criminal acts of Thomas Plummer, an employee of the plaintiff.

Simply stated, the declaration in effect, charged in detail that the plaintiff had suffered direct losses of money and property on account of certain dishonest and

criminal acts, committed by the named employee during his employment, and against which protection was provided in the policy of insurance which was issued to it by the defendant. A copy of the fidelity bond was attached. Section 4 thereof provided also that "This insurance shall terminate as to any employee * * * (b) immediately on discovery of the employer of any dishonest or criminal act committed by the employee * * *".

The answer of the defendant denied in detail the allegations of the declaration, but also pled in effect that the employee (1) either had not committed any dishonest or criminal acts, or (2) if he in fact did, then the plaintiff was fully aware of such conduct and condoned the same, and that under the terms of the policy, the bond was canceled.

The reply of the plaintiff alleged that the acts of the employee, in the early part of 1960, as borne out by its investigation, indicated mere inefficient operation and poor judgment, and were not dishonest or criminal; whereas the subsequent acts, complained about, were dishonest and criminal.

At the close of the evidence, the trial judge, by agreement, sitting as both judge and jury, found for the plaintiff and awarded the sum of $3,957 and costs. From the judgment entered thereon, the defendant appealed.

While several alleged errors have been assigned by the appellant, the real contention is that the court was manifestly wrong in its decision because, if the alleged conduct of the employee, about which complaint is made, was dishonest or criminal, then the bond was effectually cancelled because the appellee had theretofore condoned like conduct on the part of the employee.

The evidence showed that Plummer had been employed in the early part of 1960 as a commission service station operator, charged with all gasoline, oil and tires. He was required to make daily reports to the oil company, showing both the number of gallons of gasoline,

sold on the previous day, and enclosing a deposit ticket from a local bank in order to show that he had deposited sufficient money to cover for the sales. The agent was reasonably prompt in making these reports until sometime in May 1960. Because the oil company stopped honoring major oil company credit cards, there was a considerable drop in the amount of business at this station, with delays in some reports. The plaintiff made an investigation of the matter and found that Plummer had been carrying accounts on his own responsibility and that some of these were not promptly paid. Besides, he was holding a number of checks from customers, which had been returned unpaid. In addition, Plummer had, during the prosperous period, increased his overhead expenses. About July 10, 1960, following the stated investigation, and reasonably believing that Plummer had committed no dishonest or wrongful acts, the plaintiff accepted a note in the sum of $4,072.46, endorsed by his mother, for the purpose of making this account current. Within two or three months, the agent paid a substantial sum in reduction of the amount of this obligation.

The agents of plaintiff had considered Plummer to be an honest, industrious and capable dealer; that he had real ability; and that mere unintentional derelictions should not bring his services to an end, in the absence of dishonest acts. Thereafter, from August until about December 20, 1960, the daily reports, for the most part, were promptly made and the company had no knowledge of any dishonest act on the part of Plummer until the stated date, about December 20th. As a result of a "tip", an agent of the oil company made a check of the meters, at which time it was apparent that the daily reports were not correct and did not truly indicate the condition of the meters and the level of gas in the storage tank. At that time, notice was given to the defendant company of a likely shortage. Besides, the oil company

had, through form letters, acquainted the defendant with derelictions in connection with the reports. In fact, the defendant, about August 3, 1960, after receiving the form letters, delivered to plaintiff an adjustment list, covering the bond for Plummer.

Several witnesses, namely, the service station supervisor, the manager of the retail sales department, the manager of the brand sales department, and the auditor, of the company, testified in great detail as to their connection with this matter. In each instance they said that, while Plummer's manner of operation did not conform to strict businesslike methods, his reports, after the execution of a note, were reasonably accurate and that the company forgave the slack operations, upon his promise to repay the amount for which he had not been credited. However, their testimony was further to the effect that later Plummer dishonestly, fraudulently and deliberately back-read his meters, retained the company's money, and was grossly dishonest in his conduct. In effect, by this conduct, he had actually taken the company's products and had reported less than the value thereof. Besides, they all, including Britt, testified that they had no knowledge of dishonest or wrongful acts, either from Plummer or otherwise prior to the December date.

On the contrary, Plummer testified that the discrepancies in the reports complained about began in June 1960, after the company had discontinued the issuance of credit cards. Although Britt denied the story, Plummer said that Britt, the service station supervisor, told him to report "short" in order that the company might not get "down on him." He further said that he used the company's money to pay his help and that he continued to report "short" after he had signed the note. In other words, he testified that he began misreading the meters in June and continued throughout the period until December 20th; that his immediate supervisor,

Britt, knew that these misrepresentations were occurring; and that he did not receive sufficient funds to pay his help and utilities, with the deduction for payment of his note. He had some corroboration on the part of his mother in regard to knowledge by employees of the company. There was also some corroboration by a representative of the defendant company in regard to an acknowledgment by an employee of the company that Plummer's acts were known by the company.

But along with this, it was shown that Plummer had a grudge against the company, could not get a job with it when he later applied, and had been convicted of grand larceny for another separate crime. His evidence was subject to further impeachment because of the schedule under which he claimed that he had been misreading the meters.

The court was therefore faced with a sharply disputed issue as to whether the deficiencies of the employee, during May, June and July of 1960, were dishonest or criminal and were forgiven on that account by the acceptance of the note. If not, then whether or not the subsequent acts were criminal and dishonest. The trial judge resolved this issue in favor of the appellee, namely, that the earlier acts were not dishonest or criminal, but the later ones were.

Under § 5667, Appleman's Insurance Law and Practice, it is stated that "Under a bond which purports to cover only the fraud or dishonesty of an employee, it is generally held that losses due to negligence or carelessness of the employee do not render the surety liable. Nor would losses resulting from a mistake of judgment constitute fraud or dishonesty, within such a fidelity bond." In Jellico Grocery Company v. Sun Indemnity Company of New York, 114 S. W. 2d 83, a Kentucky case, it was held that the extension of credit was a mistake of judgment and not covered by an indemnity bond. See also Home Owned Stores, Inc. v. Standard Accident

Insurance Company, 76 S. W. 2d 273, 43 A. L. R. 971. In United States Fidelity & Guaranty Company v. Bank of Batesville, 112 S. W. 957, an Arkansas case, it was held, in such a case, that a loss by carelessness or inattention to business could not be recovered.

In Crescent Cigar & Tobacco Company v. National Casualty Company, 155 So. 505, a Louisiana case, the burden was of course on the plaintiff to show a breach of the fidelity bond, wherein acts of dishonesty, embezzlement, etc. were insured against. The trial court gave judgment against the insurer, but the Court of Appeals reversed the judgment of the trial court because the plaintiff had not met its burden of proving that the act in question was a breach of the bond. The opinion said: ''The proposition that a policy such as this affords no protection against unexplained stock shortages nor against carelessness of the employee, nor, in fact, against anything other than dishonest acts, is firmly established.''

In Curran & Treadway, Inc. v. American Bonding Company of Baltimore, 192 So. 335, from the Supreme Court of Louisiana, there was a conflict in the evidence with reference to knowledge of a prior embezzlement. The bonding company contended that the use of the word ''shortage'' at the time was sufficient to constitute discovery by the insured. But the Court, in reversing the judgment, said: ''It is to be observed that while every act of embezzlement involves a shortage, every shortage does not involve an act of embezzlement. A shortage in the accounts of an employee causing loss to an employer may result from mistake, disobedience of orders, or bad judgment, and not from any wrongful intent on the part of the employee. Thus, it has been held that an employee who becomes indebted to his employer through mistake or carelessness, or using funds of the employer for his personal use with no intent to defraud, is not guilty of embezzlement and

therefore of a dishonest act within the meaning of a fidelity bond'', citing authorities.

Section 2115, Code of 1942, Rec. defines one type of embezzlement as follows: ''If any director, agent, clerk, servant, or officer of any incorporated company, or if any trustee or factor, carrier or bailee, or any clerk, agent or servant of any private person, shall embezzle or fraudulently secrete, conceal, or convert to his own use, or make way with, or secrete with intent to embezzle or convert to his own use, any goods, rights in action, money, or other valuable security, effects, or property of any kind or description which shall have come or been intrusted to his care or possession by virtue of his office, place, or employment, either in mass or otherwise, he shall be guilty of embezzlement, and, upon conviction thereof, shall be imprisoned in the penitentiary not more than ten years, or fined not more than one thousand dollars and imprisoned in the county jail not more than one year, or either.''

██ █ The crime of embezzlement, according to the decisions of this Court, involves wrongful or fraudulent appropriation of the property of another. Jackson v. State, 211 Miss. 828, 52 So. 2d 914; Jones v. State, 223 Miss. 812, 79 So. 2d 273; Gradsky v. State, 243 Miss. 379, 137 So. 2d 820.

██ █ On the disputed issue of fact, it is manifest that there was ample evidence to justify the trial judge in finding that the earlier acts of the employee were mere matters of mistake or inefficiency and did not constitute dishonest or criminal conduct. The same can be said of the sufficiency of the evidence when it is applied to the acts, which finally came to light in December 1960. If the version of the appellee was believed, it clearly demonstrated that neither carelessness nor negligence was involved therein. The furtive acts of the employee were manifestly taken in a deliberate and dishonest design to embezzle and convert the money and

property of the appellee to his own use. Under such circumstances, the bond had not been previously cancelled, but was in full force and effect.

 Where the evidence on the material matters is in sharp dispute, this Court does not reverse the trial court on its finding of fact unless it is manifestly wrong. Consequently, the judgment of the trial court must be affirmed.

Affirmed.

*Kyle, Ethridge, Rodgers and Jones, JJ.,* concur.