HALL, Judge.
Plaintiffs, owners and operators of a small loan and discount company, seek in this suit to recover from the defendant insurance company on a “Small Loan Companies Blanket Bond” the sum of $2,125.00 (plus interest, statutory penalties and attorney’s fees) which they allege to have been stolen from one of their branch offices at 2610 Esplanade Avenue in the City of New Orleans.
Following trial on the merits, the District Judge, being of the opinion “that the plaintiff (sic) has not proved his case by the preponderance of the evidence as required by law,” rendered judgment in favor of the defendant, dismissing plaintiffs’ suit, and plaintiffs appealed.
The bond issued by defendant to plaintiffs, insofar as pertinent hereto, provides that the losses covered thereby are:
“A. Any loss of money * * * through any dishonest or fraudulent act, wherever committed, of any of the Employees, whether acting alone or in collusion with others.”
“B. Any loss of property through * * * theft * * * damage or destruction (howsoever or by whomsoever such damage or destruction may be caused, and whether it be effected with or without violence), while the Property is actually within any of the offices of the Insured covered hereunder * * *.”
The bond does not cover a loss by “mysterious disappearance,” nor does it stipulate, as some policies do, that “ ‘mysterious disappearance’ * * * shall be presumed to be due to theft.”
The sole question presented here is whether the proof adduced on the trial is sufficient to warrant a judgment in plaintiffs’ favor.
The broad legal principles involved are well settled. Plaintiffs bear the burden of proving that the loss was caused by one of the covered risks. See 46 C.J.S. Insurance § 1316(6), pp. 398-399; 46 C.J.S. Insurance § 1321 et seq., p. 451 et seq.; Catchot v. Delta Life Ins. Co., La.App., 57 So.2d 919; Crescent Cigar & Tobacco Co. v. National Casualty Co., La.App., 155 So. 505. The loss and cause of loss does not have to be proved beyond a reasonable doubt but must be proved by a preponderance of the evidence, and circumstantial evidence may be sufficient. See Holder v. Lockwood, La.App., 92 So.2d 768. See also Appleman, Insurance Law & Practice Vol. 21, p. 661 Sec. 12691; 46 C.J.S. Insurance § 1356, p. 531. But suspicion or speculation as to the cause of loss is not enough, as where the evidence merely shows the loss or injury id. Mere disappearance is not sufficient evidence of theft. See 46 C.J.S. Insurance § 1359, p. 561. “While mere disappearance of an article covered by a burglary or theft policy which does not contain a specific provision dealing with its disappearance is not sufficient of itself to warrant a finding that its loss was due to theft, larceny, or burglary within the terms of a policy, a. finding of such felonious abstraction may in a proper case rest upon circumstantial evidence.” 29A Am.Jur. p. 981, Rec. 1929. See cases cited in the following annotations: 41 A.L.R. 847; 44 A.L.R. 472 ; 54 A.L.R. 468. Each case must of course be decided on its own particular facts.
Plaintiffs’ proof consists of the testimony of six witnesses. Their testimony is clear, positive, contains no discrepancies and fully establishes the loss. The question is whether their testimony sufficiently proves that the loss was occasioned by a risk covered by the bond. Defendant produced no witnesses.
Plaintiffs’ branch office where the loss occurred is approximately 15 feet wide by 40 feet in depth. As one enters the office from Esplanade Avenue there is a counter which runs almost across the width of the office from the side wall of the building on *710 the right to a railing on the left which joins the counter at right angles and runs from the front towards the rear of the office. There is a small open space left for the accommodation of customers between the railing and the left side wall of the office. The employees’ desks are thus completely protected by the counter and the railing. Some file cabinets, a safe and a cash drawer are located underneath the counter. The cash drawer is located under the counter at the corner where the counter joins the railing. The safe is located under the counter on the side of the cash drawer farthest from the railing. The safe has the appearance of a three or four drawer file cabinet and is equipped with a push type lock, which locks when it is pushed in and can be unlocked only with a key. The safe cannot be reached by persons standing immediately in front of the counter, and while it can be reached by a person standing outside the railing near its junction with the counter he would have to lean well over the railing. The distance from the outside edge of the rail to the near edge of the safe is about 26 inches. The drawers of the safe make a noise when pulled out.
There were only two full-time employees in the branch office, Mr. Binney and Mrs. Raynol. A negro, Leroy Smith, was employed to clean the office each night. Keys to the office were issued to Mr. Binney, Mrs. Raynol and Smith and also to Mr. Frigola, plaintiffs’ bookkeeper, who visited the office periodically. Only Mr. Binney, Mrs. Raynol and Mr. Frigola had keys to the safe.
In order to render it difficult for a thief to discover the bulk of the cash money, maintained in the branch office, the practice was followed of putting it in a “loan pocket”, which is the size and shape of an envelope, and to put the loan pocket either in the middle or towards the rear of one of the file drawers in the safe where it was continuously kept. The file drawers usually contained about 400 similar loan pockets. The only persons who had knowledge of this practice were Mr. Binney, Mrs. Ray-nol, Mr. Frigola, Mr. Rhems, president of the plaintiff corporations, and Mr. King, another officer.
At the close of business on October 3, 1961, there was $2,774.91 cash on hand in the office. Mrs. Raynol testified that she put $2,125.00 of this amount in a loan pocket and filed the pocket in the middle of one of the file drawers in the safe. She put the remaining cash in a small iron box which she placed in the bottom of the same safe. Upon leaving the office on that day Mr. Binney locked the safe and locked the office door. The office was air conditioned and the windows in the office always remained locked. That night the office was cleaned by the porter, Leroy Smith. He did not admit anyone to the office.
Plaintiffs admitted in their answers to interrogatories that “there was no evidence of any type of forcible entrance on October 3 and October 4, 1961 at 2610 Esplanade Avenue, New Orleans, Louisiana, or into the safe therein contained.”
Mr. Binney and Mrs. Raynol returned to the office on the morning of October 4. Mr. Binney arrived about 8:15 A.M. and opened the office and the safe. Both Mr. Binney and Mrs. Raynol testified that they may have had occasion to handle loan pockets during that morning. There was no time during the day that the office was left unattended. Only four to six customers came into the office on October 4. None of them went behind the railing. The testimony further shows that had any of them attempted to open the safe drawers, which were customarily kept closed, they would have been seen or heard.
During the early afternoon of October 4, Mrs. Raynol discovered that the loan pocket containing the $2,125.00 was missing from the safe drawer. A search of the office, which included an examination of all loan pockets in the safe drawer was made, and the money was not found. The only loan pocket missing from the approximately 400 loan pockets in the safe drawer was *711 the one containing the $2,125.00 and this pocket was never found. The office was thoroughly searched on several subsequent occasions and Mr. Binney testified that he did not think the money could still be anywhere in the office.
Mr. Binney, Mrs. Raynol, Smith, Mr. Frigola and Mr. Rhems denied that they took the missing funds. Mr. King was hospitalized at the time and had no knowledge of the circumstances surrounding the disappearance of the money from the safe. None of the employees were discharged by plaintiffs and their honesty is not questioned by anyone. All of them are still in plaintiffs’ employ.
The testimony further shows that none of the keys to the office nor to the safe were ever out of the possession of the persons to whom they were intrusted, nor did any of the employees admit any unauthorized person to the office or to the safe.
Appellants contend that the proof shows the money is gone and argue that the only possible way the money could have gotten out of the office was through some dishonest act on the part of an employee or through theft, damage or destruction, all of which are covered by the provisions of the bond.
But the absence of any guilt on the part of plaintiffs’ employees is not only supported by their testimony, but is obviously conceded by plaintiffs’ president, who testified that he has no cause to suspect any of them and no reason to question their honesty.
A theft of the money by a customer or a stranger during office hours seems to have been highly improbable, if not impossible. First, he would have had to know that the money was kept in a loan pocket in the safe drawer, which was apparently a closely guarded secret. Secondly, he would have had to lean well over the railing and then open the safe drawer without being seen or heard by plaintiffs’ employees which they said could not well have been done. Thirdly, he would have had to single out the loan pocket containing the money which was sandwiched among 400 similar-loan pockets.
The testimony shows that the office and the safe was locked during non-business hours and all deny furnishing anyone the means of obtaining access to the office during that time. There was no evidence of any forced entry into the office or the safe and the only conclusion is that a theft of money could not have occurred after business hours.
There is nothing whatever in the record that lends any support to plaintiffs’ contention that the loss of the property was or may have been occasioned through damage or destruction.
In our opinion there is nothing in plaintiffs’ proof from which a valid inference may be drawn that the loss was occasioned by dishonesty of an employee, by theft, or by damage or destruction. In fact, the proof goes far to negative each of these causes of the loss. No reasonable connection is shown between the established facts and the loss itself. What we are confronted with here, in our opinion, is a “mysterious disappearance” of the money in that it disappeared under “unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain * * Davis v. St. Paul Mercury & Indemnity Co., 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220. “Mysterious disappearance” is not a risk covered by the bond sued upon.
We would seem less than human if we did not theorize as to the cause of the loss but speculation or suspicion is not enough to entitle plaintiff to a judgment.
We agree with the District Judge that plaintiffs have failed to make out their case by a preponderance of the evidence.
For the foregoing reasons the judgment appealed from is affirmed; costs in both courts to be borne by appellant.
Affirmed.