CHASEZ, Judge.
Plaintiff, J. H. Rutter-Rex Manufacturing Co., Inc., appeals from a judgment dismissing its suit on a comprehensive dishonesty policy against Liberty Mutual Insurance Company, seeking to recover for a $1,746.36 shortage in a shipment of work clothes from plaintiff’s New Orleans factory to its Columbus, Ohio depository.
*307 The testimony in the record is that the missing cartons of clothing, identified by IBM card numbers, were placed on plaintiff’s truck at New Orleans; the truck was locked with padlocks and seals placed on its doors; and plaintiff’s driver took the truck later that same day and drove it to Columbus, Ohio, stopping frequently for coffee and once for six hours sleep. The truck could not be opened without removing both the seals and the locks, and the seals and locks were intact upon arrival at Columbus. The truck was then parked overnight because it arrived too late for immediate unloading. The following morning, the driver, Thomas Reynolds, testified he cut the seals as the Columbus manager, Kirk Drake, was coming down the steps to open the truck and that Drake saw him break the seals; Mr. Drake in answer to direct interrogatories, stated he “ * * * went outside and found that the seals had already been broken, * * * ” and in response to cross-interrogatories, — “ * * * The seals had already been broken by the driver.” The locks had to be broken at Columbus because the driver testified, though he had keys for other locks, he didn’t have a key for those locks.
The driver testified:
“Me and Mr. Kirk (the Columbus manager) busted the back lock open, then the speedometer had to be fixed on the truck. We went to White Motor Company to get the speedometer fixed after it was unloaded. I had the White Motor Company take a torch and cut the other one off, because I had to go unload again.”
* * *
On cross-examination the driver testified :
“Q. I want to refer you to the time when you arrived in Columbus, and when you went out to break the seals on the truck.
This was after you had spent the night — the next morning. Who was with you when you went out to break the seals ?
“A. Well, Mr. Kirk was coming down the steps, like I said, as I was cutting them.
“Q. Did he see you break the seals?
“A. Yes, sir.
‘Q. You are certain he saw you break the seals?
“A. Yes, positive.
“Q. In other words, the seals were still intact when you arrived in Columbus, Ohio?
“A. Yes, sir.
“Q. There was no tampering with the-truck at any time between New Orleans and Columbus ?
“A. To the best of my knowledge,, there wasn’t. If there was, I should have seen it.”
Mr. Drake’s answers to interrogations do-not mention the trip to White Motor Company, either to confirm or to deny it.
The Columbus office signed the bill of lading without making any notation of shortage. Mr. Drake explained he did this, (the bill of lading is signed “R. L. Cottle”), although the shipment appeared short, to enable the driver to begin his return trip, and to get the truck out of the loading area. An hour and a half search of the Columbus, warehouse failed to locate the missing cartons, and New Orleans was notified of the-shortage by telephone.
Plaintiff argues the loss is covered under-the “Loss Caused by Unidentified Employees” provision of the policy, reading:
“LOSS CAUSED BY UNIDENTIFIABLE EMPLOYEES
“Section 4. If a loss is alleged to have-been caused by the fraud or dishonesty of any or more of the Employees and the Insured shall be unable to designate- *308 the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2(b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further, that the aggregate liability of the company for any such loss shall not exceed the Limit of Liability applicable to Insuring Agreement I.”
The policy does not cover mysterious disappearance, nor does it contain any other coverage pertinent to the present factual situation.
The District Court was of the opinion that plaintiff had not borne its burden of reasonably proving employee fraud or dishonesty. We agree with that conclusion.
The evidence shows the great improbability (or impossibility) of theft by the driver. Mistake in loading or unloading or the like is also conceivable, albeit improbable. Conjecture of possible means of theft by the driver, by other employees at New Orleans or by the warehouse employees at Columbus cannot “reasonably prove that the loss was in fact due to the fraud or dishonesty of one or more of the said employees.” We have no more basis to speculate about possible theft than we have to speculate about possible mistake.
“There can be no presumption of dishonesty. In fact, in the absence of proof to the contrary, it is to be presumed that all persons are honest.” Crescent Cigar & Tobacco Co. v. National Casualty Co., 155 So. 505 (La.App.1934).
This court very recently in an analogous situation dealing with a claim on a bond covering employee dishonesty and theft, discussed the general legal principles involved. The final test is, of course, whether the loss occurred as a result of a risk covered by the insurance policy or bond. See King Finance Co. v. Fireman’s Fund Ins. Co., and the authorities there cited, rendered on January 6, 1964, La.App., 159 So.2d 708.
We there noted the obvious rule that “suspicion or speculation as to the cause of loss is not enough, as where the evidence merely shows the loss or injury.”
Thus, even though we should take the evidence here as proving the loss, we cannot on this record find the employee dishonesty necessary to recovery under the quoted provision of the insurance policy.
The judgment appealed from is therefore affirmed at plaintiff’s cost.
Affirmed.