704 So.2d 808 (1997)
Johnny BOURQUE, Plaintiff-Appellee,
v.
AUDUBON INSURANCE COMPANY, Defendant-Appellant.
No. 97-522.
Court of Appeal of Louisiana, Third Circuit.
November 19, 1997.
Writ Denied February 20, 1998.
*809 Kent Mercier, Lafayette, for Johnny Bourque.
Kraig Thomas Strenge, Lafayette, for Audubon Insurance Company, et al.
Before WOODARD, SULLIVAN and PICKETT, JJ.
WOODARD, Judge.
Plaintiff, Johnny Bourque (Bourque), filed suit on July 23, 1993 against the defendant, Audubon Insurance Company (Audubon), to recover proceeds under a policy of homeowner's insurance for wind damages that occurred to a small structure on his property that he used to train roosters to fight. Bourque contended that Audubon arbitrarily and capriciously failed to pay for the wind damage. From a decision by the trial court awarding damages, penalties, and attorney's fees, this appeal was taken. We affirm.

FACTS
All of his life, Bourque has been involved with raising and fighting roosters. The structure damaged by the wind storm, for *810 which he presented a property damage claim to Audubon, was his "cockhouse." The structure was used to train his roosters to fight. It was also used to store feed and supplies to care for his roosters.
For ten years prior to the date of the wind damage, Bourque had been disabled as a result of a previous work related accident. At trial, he testified that his only means of financial support was his monthly social security check. Bourque admitted that he entered his roosters in cockfighting derbies every Friday night and that he won prize money in the derbies.
His rooster operation was substantial. At any given time, he had approximately 200 roosters which he was raising and training to fight. As a part of this operation, he had a partner, Elliott Bienvenu. The two agreed that the roosters Bienvenu bred would be turned over to Bourque to train when they were ten months old. Bourque would train them to fight and enter them into derbies, and the two would split the winnings evenly.
Bourque admitted that he took prize money home on a monthly basis. He also testified that the prize money he earned at the derbies merely offset his expenses for raising and training the roosters. Neither Bourque nor Bienvenu kept any records of the money they won. Bourque kept no records of his monthly expenses for the care and training of the roosters, and all the prize money Bourque won in the cockfighting derbies was paid in cash.
At the time of the cockhouse damage, his homeowner's policy provided for coverage for "other structures" located on the property. In relevant part, the policy stated:
We cover other structures on the residence premises set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.
This coverage does not apply to land, including land on which the other structures are located.
We do not cover other structures:
1. used in whole or in part for business; or
2. rented or held for rental to any person not a tenant of the dwelling; unless used solely as a private garage.
The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.
(Emphasis added).
When Audubon received notice of Bourque's claim of April 8, 1993, for wind damage to the cockhouse roof, it conducted a brief investigation, sought a legal opinion and ultimately denied Bourque's claim for insurance coverage because the cockhouse was allegedly being used as a part of the "business" of raising roosters for cockfighting.
Bourque filed this suit on July 23, 1993. It was tried on November 10, 1994. The trial court ruled from the bench in favor of Bourque. She awarded Bourque $4,000.00 in compensatory damages, $8,000.00 in penalties for Audubon's alleged violation of La. R.S. 22:1220 and attorney's fees in the amount of $6,000.00, rendering Written Reasons for Judgment on December 6, 1994. She signed the formal judgment on June 16, 1995. Audubon filed a Motion for a New Trial on June 21, 1995, which was denied on October 8, 1996. Audubon filed a Motion and Order for a Suspensive Appeal on October 23, 1996. These proceedings followed.

ASSIGNMENTS OF ERROR
Audubon claims the following assignments of error:
1. The trial court erred in failing to grant the defendant's Motion for Involuntary Dismissal.
2. The trial court erred in finding that Bourque's activities of raising, training, and fighting roosters did not constitute a "business."
3. The trial court erred in awarding Bourque statutory penalties and attorney's fees.

LAW

THE MOTION FOR INVOLUNTARY DISMISSAL
At the conclusion of Bourque's case, Audubon moved for involuntary dismissal on the *811 grounds that Bourque had failed to prove the existence of the insurance contract during his case. Audubon argued that Bourque's counsel had failed to request or produce a complete copy, certified or otherwise, of any policy of insurance issued by Audubon.
The burden of proof is on the plaintiff to establish every fact essential to his claim and that his claim is within the insurance policy coverage. Mercadel v. Tran, 92-798 (La.App. 4 Cir. 3/29/94); 635 So.2d 438; Pierce v. Aetna Life and Cas. Ins. Co., 572 So.2d 221 (La.App. 1 Cir.1990); C.L. Morris, Inc. v. Southern Am. Ins. Co., 550 So.2d 828 (La.App. 2 Cir.1989).
While the trial court acknowledged that Bourque had failed to introduce the policy of insurance, it found that the record contained enough information upon which to find the existence of a contract of insurance between the plaintiff and defendant and its terms and conditions by reason of the testimony of the insurance adjuster. The trial court denied Audubon's Motion for Involuntary Dismissal.
We note that the record before us establishes that Audubon specifically denied in its pleadings Bourque's allegations regarding insurance coverage. At trial, the parties stipulated to the authenticity of a standard HO-3 homeowners form for the policy. Audubon contends that the HO-3 form is only one of several documents making up this entire policy and that there would be additional endorsements, amendatory endorsements for specific Louisiana provisions, a certified declarations page, and other documents making up the entire policy.
The question we have to decide is whether the trial record, as it existed at the time the trial court denied Audubon's Motion for Involuntary Dismissal, established Bourque's claim to compensatory damages under a contract of insurance with Audubon by a preponderance of evidence.
The evidence in the record establishes that Steven Durand, an insurance agent with the Durand Insurance Agency, sold a National Union Fire Insurance Company homeowner's insurance policy to Bourque to cover his home, adjacent structures, personal property, loss of use, liability, and medical payments. The renewal declaration was introduced into evidence for the policy period November 15, 1992 to November 15, 1993. The document established the coverages, the limits of liability, that "other structures" were covered to the extent of $5,000.00, the policy number was identified, and that it was a "HO-3" policy; i.e., a homeowner's policy. The named insured on the policy was the plaintiff. The premium for the policy was $437.00 per year, which Durand acknowledged receiving.
As a joint stipulation, Audubon's counsel offered into evidence the standard terms of the HO-3 homeowner's policy of Audubon. This document describes the terms and conditions of the insurance policy relevant to this case, including sections captioned as AGREEMENT, which stated, "[w]e will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy[.]", DEFINITIONS, SECTION I  PROPERTY COVERAGES, SECTION I  PERILS INSURED AGAINST, SECTION I  EXCLUSIONS, SECTION I  CONDITIONS, SECTION II  LIABILITY COVERAGES, SECTION II  EXCLUSIONS, SECTION II  ADDITIONAL COVERAGES, SECTION II  CONDITIONS, and SECTIONS I AND II  CONDITIONS. Additionally, by stipulation, the complete underwriting file for the plaintiff's homeowner's policy was introduced into evidence.
Bourque testified that he purchased his homeowner's insurance from Durand and that when he sustained the wind damage to his outbuildings, he notified him of the claim; Roger Cook, a claim representative for Audubon, visited him; and his insurance claim was subsequently denied because the insurance company considered his activity of raising roosters to be a "business." Later, he was notified that his homeowner's insurance policy was not renewed.
Durand testified that, by letter dated August 24, 1993, he notified plaintiff that his homeowner's insurance policy would not be renewed because he was raising fighting roosters on the property.
*812 Cook testified that he received notice of the plaintiff's insurance claim on April 12, 1993. He inspected the premises on April 13, 1993 and denied coverage on April 14, 1993. He estimated the damage to the outbuilding to be in excess of $5,000.00
On this record, the trial court found that Bourque had introduced sufficient evidence to establish having an Audubon homeowner's insurance policy during the period when the loss occurred, defeating the Motion for Involuntary Dismissal of Audubon, which was based on Bourque's failure to introduce into evidence a certified copy of the policy.
We agree that the direct and circumstantial evidence of the existence of Bourque's insurance contract, its terms and conditions, the existence of the wind damage to Bourque's structure, and the value of the damage, were sufficiently proved to defeat Audubon's motion. Accordingly, this assignment of error is without merit.

WHETHER RAISING ROOSTERS TO FIGHT IS A BUSINESS
In this assignment of error, Audubon contends that the trial court erred in finding that Bourque's activities in raising roosters on his property was not a "business" and that the Audubon homeowner's insurance policy exclusion, pertaining to business activities on the homeowner's property, did not exclude coverage under the policy for the damages suffered by Bourque to his cockhouse.
As this decision of the trial court is purely a factual one, in order for Audubon to prevail, the court's decision must be manifestly erroneous or clearly wrong. It is settled law that an appellate court may not set aside a trial court's finding of fact in the absence of manifest error. Stobart v. State Dep't of Transp. and Dev., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court has adopted a two part test for the reversal of a fact finder's determination: an appellate court must find from the record that (1) a reasonable factual basis does not exist for the finding of the trial court and (2) the finding is clearly wrong. See Mart v. Hill, 505 So.2d 1120 (La.1987). Thus, the issue to be resolved by the appellate court is not whether the trier of fact was right or wrong, but whether the trial court's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991).
Audubon contends that the evidence establishes that Bourque's rooster activity was a business that the evidence, at any given time, was that he had as many as 200 roosters which he was raising to fight and that he had as many as four or five 20' × 20' breeding pens and 125 tepees, i.e., small sheds for his roosters to seek shelter from the heat of the sun, on his property, all of which establishes a business. Further evidence of a business, says Audubon, is Bourque's financial agreement with Bienvenu to raise and fight Bienvenu's roosters and split the winnings evenly.
At the conclusion of the trial, the court stated:
The first issue for determination today is whether the activity being conducted on the premises was a business or a hobby. As we have discussed, and in the comments made before we began today, that determination is totally fact sensitive. What is a business for one person is not a business for another. It depends on this particular individual and the particular circumstances of this case. A subjective decision.
Later, in written REASONS FOR JUDGMENT, the court stated:
In this matter the evidence adduced at trial demonstrates that Bourque's rooster activity was part of his family's tradition. Bourque testified that he makes only enough on winnings to buy feed for his roosters and certainly not enough to change his life style in any way. He charges for no services, does not advertise, does not report winnings as income, and employs no workers. The circumstances of this case show that the raising and fighting of roosters is not a business for him.
We have reviewed the record to determine if the trial court's decision on this issue was a reasonable one based on the evidence. There is no doubt that Bourque's activity with his roosters is a substantial activity for *813 him, but this alone does not establish a business, as Audubon would like us to believe, as opposed to a hobby for this disabled man with a great deal of time on his hands. Viewing the evidence as a whole, we cannot say that the trial court's determination was clearly wrong or manifestly erroneous. Thus, we uphold the court's decision that Bourque's cockhouse was not excluded from coverage and its award of $4,000.00 in compensatory damages.

THE AWARD OF STATUTORY PENALTIES AND ATTORNEY'S FEES
Pursuant to La.R.S. 22:1220, the trial court awarded Bourque $8,000.00 in penalties and $6,000.00 in attorney's fees for Audubon's arbitrary and capricious failure to pay Bourque's claim within sixty days of proof of loss. La.R.S. 22:1220 provides for the assessment of penalties against an insurer in certain statutorily defined situations and states:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after the receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.
In Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97); 694 So.2d 184, 193, the Louisiana Supreme Court held that "we conclude that although a right of action is available to both insureds and third-party claimants under La.R.S. 22:1220, only the commission of the specific acts listed in La. R.S. 22:1220 B can support a private cause of action for breach of the statute." Thus, the question before us is whether the actions of Audubon in adjusting Bourque's claim fell within the statutory prohibitions of La.R.S. 22:1220 B, warranting the penalty award of $8,000.00.
The trial court in its written REASONS FOR JUDGMENT concerning this issue stated:
The evidence admitted into evidence at trial shows that the insurance company knew at the time of the application for coverage that Bourque was raising fighting roosters on his property. Following the claim for fire damage, the adjuster questioned Bourque about the activity and again noted it on his inspection report. Since the defendant was aware of a potential problem a year before the wind damage occurred to the feed house, they should have informed Bourque at this time that he could in the future have a coverage question. The agent made a diligent effort to determine his obligation after the loss occurred. That concern could have saved the penalty if it had occurred prior to loss. *814 Bourque was led to believe that he had insurance coverage.
The record supports the findings of fact iterated in the court's Reasons for Judgment. Inter alia, Cook testified that one year and a half prior to his denial of the wind damage claim, when he had handled the fire loss claim, Bourque had shown him "his brood of baby chicks inside of his house with the fire loss" and told him that "he had fighting roosters and he was making pretty good money at it." He went on to say that because of the number of roosters Bourque had on his property and in the outbuilding structure, at that time, he had believed that Bourque had a business. However, he did not advise Bourque of a problem with his existing coverage related to this structure, he did not investigate further as to the business aspect, and Audubon continued to receive Bourque's premium payments. We conclude that Audubon's inaction meant that Audubon had no problem with Bourque's existing coverage of his outbuilding. Thus, Audubon is estopped from denying the existence of coverage and cannot arbitrarily, without penalty, assert "exclusion" when a claim is made, and refuse to pay.
The evidence is undisputed that Audubon did not pay Bourque's claim within sixty days after receiving proof of loss, in violation of La.R.S. 22:1220 B(5). We find no manifest error in the court's ruling on this issue.
Finally, the court awarded $6,000.00 in attorney's fees, finding that Audubon had acted in "bad faith" in violation of La.R.S. 22:1220. The term "bad faith" is a generic term used to describe the conduct of an insurer who breaches its statutorily imposed duty to act in "good faith" and engage in "fair dealing" in adjusting claims. The specific acts that constitute "bad faith" are defined in La.R.S. 22:1220 B(1)-(5). Theriot, 694 So.2d 184. We note, however, that La. R.S. 22:1220 does not provide for attorney's fees. Instead, they are authorized under La.R.S. 22:658 which provides, in part:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
....
(4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim.
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount.
(Emphasis added).
The legislative history of La.R.S. 22:1220 and La.R.S. 22:658 is closely related. Theriot, 694 So.2d 184. For example, "La. R.S. 22:658 A(3) expressly cross references and notes that penalties for its breach are available under La.R.S. 22:1220." Id. at 189. An insurer's arbitrary and capricious failure to adjust a claim upon satisfactory proof of loss within sixty days, as here, is a violation of La.R.S. 22:1220 B(5). The same arbitrary and capricious conduct, as here, in failing to adjust an insured's claim within thirty days of satisfactory proof of loss will constitute a breach of La.R.S. 22:658 B(1) and will subject the insurer to liability for attorney's fees. Thus, the trial court's award of $6,000.00 in attorney's fees to Bourque was proper.
This assignment is, likewise, without merit.

*815 CONCLUSION
The trial court's award of $4,000.00 in compensatory damages to Bourque and its denial of Audubon's Motion for Involuntary Dismissal are affirmed. The trial court's awards of $8,000.00 in penalties and $6,000.00 in attorney's fees are affirmed. All costs are to be paid by appellant.
AFFIRMED.