# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**03-0480**

DINH HO

VERSUS

**STATE FARM MUTUAL AUTO INSURANCE CO.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 01-64292
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

**REVERSE**

**David Benoit**
**Attorney at Law**
**P. O. Box 877**
**Breaux Bridge, LA 70517**
**(337) 332-6666**
**Counsel for: Plaintiff/Appellee**
        **Dinh Ho**

**M. Katherine P. Martin**
**Attorney at Law**
**P. O. Box 81338**
**Lafayette, LA 70598-1338**
**(337) 291-2440**
**Counsel for: Defendant/Appellant**
        **State Farm Mutual Auto Ins. Co.**

**SAUNDERS, J.**

The issues on appeal to this court arise from the alleged theft in Breaux Bridge, St. Martin Parish, Louisiana, of a 1997 Infiniti I30 owned by Mr. Dinh Ho. The Infiniti was insured by State Farm Mutual Automobile Insurance Company, hereinafter "State Farm."

**FACTS**

On or about May 4, 2001, Mr. Dinh Ho called the Breaux Bridge City Police Department alleging that his 1997 Infiniti I30 had been stolen. Sergeant Todd Anslum was dispatched to take the initial report. Sergeant Anslum noticed broken glass where Mr. Ho indicated that his vehicle had been parked. Mr. Ho informed Sergeant Anslum that the vehicle had been locked. Mr. Ho did not inform Sergeant Anslum that there was, allegedly, another key to the vehicle. The other key was allegedly attached to the underside of the vehicle inside a magnetic key box. Sergeant Anslum duly reported the automobile as stolen.

On May 9, 2001, Sergeant Terry Guidry of the St. Martin Parish Sheriff's Department was notified that a damaged and abandoned 1997 Infiniti I30 had been found west of Henderson, Louisiana, along the Atchafalaya Basin levee. Sergeant Guidry went to the scene and inspected and photographed the vehicle at the recovery site. The vehicle was identified as belonging to Mr. Ho. Sergeant Guidry did not find a key nor did he find a magnetic key box at the recovery site. However, Sergeant Guidry did notice, and his photographs reflect, that a bird's nest had been constructed in the speedometer cluster of the vehicle.

On May 10, 2001, Steve Allemond, an appraiser and estimator for State Farm, with more than fifteen years experience, inspected the Infiniti. The presence of the bird's nest suggested to Mr. Allemond that the Infiniti had been abandoned for longer

than the five or six days that the vehicle had been reported missing and that additional investigation of this incident was warranted. After further investigation, State Farm denied Mr. Ho's claim. Mr. Ho then filed suit against State Farm to recover payment under his policy of insurance.

**PROCEDURE**

On June 4, 2001, in his Affidavit of Partial Vehicle Theft/Vandalism, Mr. Ho providentially recalled that at the time the vehicle was allegedly stolen, two keys for the vehicle existed. One key was in Mr. Ho's possession, both before and after the alleged theft, and the other key was in a magnetic key box attached to the underside of the vehicle and had been in place underneath the vehicle for at least one year.

Trial of this matter occurred September 6, 2002, before Judge Charles L. Porter of the Sixteenth Judicial District. On November 5, 2002, the trial court provided its Written Reasons for Judgment. The trial court found that State Farm had failed to offer any proof showing that Mr. Ho knowingly or intentionally made material misrepresentations with the intent to deceive and defraud State Farm with respect to the reporting of the Infiniti being stolen on or about May 4, 2001. Consequently, the trial court ruled in favor of Mr. Ho and awarded him $8,994.31 plus legal interest from the date of the judicial demand and all costs of court. The final judgment was signed January 6, 2003. On February 3, 2003, State Farm timely filed a Motion and Order for Suspensive Appeal.

**ASSIGNMENTS OF ERROR**

State Farm advances four assignments of error.

> 1) The trial court erred in failing to require the insured to prove by a preponderance of the evidence that his claim qualified for coverage under the terms of the State Farm policy prior to shifting the burden of proof to State Farm to

2

prove an intentional material misrepresentation by the insured.

2)  The trial court committed manifest error because there is no reasonable factual basis in the record to support a conclusion that Mr. Ho's vehicle was stolen or that any damage to Mr. Ho's vehicle was covered under the State Farm policy as an "accidental" loss or "theft."

3)  The trial court committed manifest error in failing to recognize that Mr. Ho made false statements with the intent to deceive State Farm in connection with the claim asserted under his policy so as to nullify any coverage afforded under the State Farm policy.

4)  The trial court committed manifest error in awarding the actual cash value of the vehicle without reducing that amount by the insurance deductible or the salvage value of the vehicle where the undisputed evidence established that Mr. Ho retained, repaired and continued to use the vehicle after the loss.

**LAW AND ANALYSIS**

The standard of review for findings of the trial court has been clearly established in this circuit. A court of appeal may not set aside a judge's factual finding unless that finding was manifestly erroneous or clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So.2d 882 (La.1993). Absent "manifest error" or unless it is "clearly wrong," the jury or trial court's findings of fact may not be disturbed on appeal. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990). If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 1112. However, when appellate courts find that a reversible error of law or manifest error of material fact was made in the lower court, appellate courts are required to redetermine the facts de novo from the entire record and render a judgment on the

3

merits. *McLean v. Hunter*, 495 So.2d 1298 (La.1986); *Otto v. State Farm Mut. Auto. Ins. Co.*, 455 So.2d 1175 (La.1984); *Ragas v. Argonaut S. W. Ins. Co.*, 388 So.2d 707 (La.1980).

**ASSIGNMENT OF ERROR NUMBER ONE:**

State Farm's first assignment of error concerns the trial court's failure to require the insured to prove that his claim of theft qualified for coverage under the terms of the State Farm policy prior to shifting the burden of proof onto State Farm to prove an intentional material misrepresentation by the insured. We agree with the contentions of State Farm and reverse the trial court.

The trial court's determination that a theft occurred is a finding of fact that is subject to the manifest error standard of review. *Tabchouri v. Progressive Ins. Co.*, 00-0134 (La.App. 3 Cir. 12/6/00), 775 So.2d 1127. Furthermore, Louisiana law requires plaintiff to prove its claim to the satisfaction of the court, and places the burden on the plaintiff to establish every fact essential to recovery and to establish that the claim falls within the policy coverage. *Clark v. Clarendon Ins. Co.*, 02-1314 (La.App. 3 Cir. 3/26/03), 841 So.2d 1039; *Bourque v. Audubon Ins. Co.*, 97-0522 (La.App. 3 Cir. 11/19/97), 704 So.2d 808, *writ granted in part on other grounds*, 97-3142 (La.2/20/98), 709 So.2d 766; *Mercadel v. Tran*, 92-0798 (La.App. 4 Cir. 3/29/94), 635 So.2d 438; *Pierce v. Aetna Life and Cas. Ins. Co.*, 572 So.2d 221 (La.App. 1 Cir. 1990); *C.L. Morris, Inc. v. Southern Am. Ins. Co.*, 550 So.2d 828 (La.App. 2 Cir. 1989); *Ceasar v. Great Falls Ins. Co.*, 371 So.2d 1286 (La.App. 3 Cir. 1979); *Collins v. New Orleans Pub. Serv. Inc.*, 234 So.2d 270 (La.App. 4 Cir. 1970). The plaintiff needs to prove by a preponderance of the evidence the cause of the loss; mere suspicion or speculation as to the cause of the loss is not enough. *King Fin. Co.*

*of La. Inc. v. Fireman's Fund Ins. Co.*, 159 So.2d 708 (La.App. 4 Cir.), *writ granted,* 247 La. 113 (1964). Evidence that a loss or injury has occurred is not enough to afford coverage under a policy of insurance where the evidence merely shows the occurrence of a loss or injury. *Id.* "Mere disappearance is not sufficient evidence of theft." *Id. at* 709.

The trial court found that State Farm failed to offer any proof that Mr. Ho knowingly or intentionally made misrepresentations with the intent to deceive and defraud with respect to the reporting of the Infiniti being stolen on or about May 4, 2001, and consequently found State Farm liable under the policy. To reach this conclusion, the trial court had to consider all of the evidence presented by both parties. However, after a careful review of the record, we find that the trial court failed to require the Plaintiff to meet the initial burden of proving that the loss was occasioned through an occurrence that fell within the coverage provided by Mr. Ho's policy of insurance with State Farm. Consequently, the trial court prematurely shifted the burden of proof onto State Farm. The relevant portions of the insurance contract are outlined below.

Section IV - Physical Damage Coverages

**Loss** - means, when used in this section, each direct and accidental loss of or damage to:

1.  **your car**,

2.  its equipment which is common to the use of **your car** as a vehicle;

3.  clothes and luggage insured; and

4.  a detachable living quarters attached or removed from **your car** for storage. Detachable living quarters include its body and items securely fixed in place as a permanent part of the body. **You** must have told us about the living quarters before the **loss** and paid any

5

extra premium needed.

Comprehensive - Coverage D

1.  Loss to your car.  We will pay for **loss** to **your car** EXCEPT LOSS BY COLLISION but only for the amount of each **loss** in excess of the deductible amount, if any.

    Breakage of glass, **or loss caused by** missiles, falling objects, fire, **theft**, larceny, explosion, earthquake, windstorm, hail, flood, malicious mischief or vandalism, riot or civil commotion, is payable under this coverage.

The insurance policy in question requires the Plaintiff to prove by a preponderance of the evidence that there was a direct and accidental loss of or damage to the car caused by theft.  The mere fact that Mr. Ho's Infiniti disappeared and was vandalized does not automatically indicate that his car was stolen, thus imposing liability on State Farm.  In fact, the record shows the only evidence relied upon by the trial court to establish State Farm's liability was that Mr. Ho provided evidence that he was the owner of the Infiniti I30, Mr. Ho had an insurance policy with State Farm, and Mr. Ho reported that his Infiniti had been stolen.  Mr. Ho did not provide any evidence to the trial court, other than his assertions of theft, to prove that his car had been stolen.  Although in some circumstances, such as where the vehicle is never recovered and unavailable for examination, this showing may be sufficient, in this case the weight of the evidence clearly favors a decision contrary to the findings of the trial court.

State Farm provided to the trial court uncontested evidence refuting Mr. Ho's claims of theft.  Mr. Steve Allemond of State Farm, who was accepted by the trial court as an expert in auto mechanics, noted that the steering column of the Infiniti, although tampered with, was still in its locked position and that the ignition cylinder had not been defeated.  These facts led Mr. Allemond, in his expert opinion, to

6

conclude that the minimal damage to the steering column would not have allowed anyone to drive the car without the key specifically designed for Mr. Ho's Infiniti.

After State Farm's expert had determined that the only way the Infiniti could have been driven was through the use of one of the Infiniti's own keys, State Farm employed the services of North Eastern Technical Services, hereinafter "NETS," to conduct a further investigation and forensic analysis of the Infiniti. Douglas Delaney of NETS, accepted as an expert in the field of forensic analysis by the trial court, agreed with the findings of Mr. Allemond concerning the steering column and the impossibility of driving the vehicle without the key specifically designed for Mr. Ho's Infiniti. NETS also conducted a forensic examination of the ignition lock assembly and performed a microscopic analysis of the ignition lock mechanism. Richard Pacheco of NETS, accepted by the trial court as an expert in forensic analysis and auto theft, and Mr. Delaney both concluded that Mr. Ho's Infiniti had been driven with a key designed specifically for Mr. Ho's Infiniti.

In investigating Mr. Ho's claims that he kept a spare key to the Infiniti in a magnetic key box located underneath the car, NETS performed two examinations. The first examination was a visual inspection, looking underneath the car in the area indicated by Mr. Ho as the area where he placed the magnetic key box, for an area where dirt or dust had not adhered to the underside of the vehicle because of the presence of a magnetic key box. This examination yielded no evidence that a magnetic key box had been attached to the Infiniti.

NETS also examined the Infiniti for any residual magnetic signatures. As explained by NETS, the magnet from a key box would transfer its magnetism to the metallic structure of the Infiniti where the key box was attached and leave a magnetic signature that could be detected. Mr. Pacheco testified that even if the key box had

7

remained on the vehicle for only a few days the residual magnetism would remain and be detectable for up to one year. Mr. Pacheco further testified that had the key box been in place for one year, as claimed by Mr. Ho, the residual magnetism would remain and be detectable for as long as three years later. NETS found no residual magnetic signature or any other evidence indicating that a magnetic key box had ever been attached to Mr. Ho's Infiniti I30.

This court is aware that when an insurer seeks to limit or relieve its liability under a policy, the burden of proving the essential facts necessary to relieve or limit the liability rests upon the insurer. *Ledet v. Nat'l Car Rental Sys. Inc.*, 96-1270 (La.App. 3 Cir. 6/4/97), 694 So.2d 1236; *Ralston v. Conn. Gen. Life Ins. Co.*, 617 So.2d 1379 (La.App. 3 Cir.), *reversed on other grounds*, 625 So.2d 156 (La.1993); *Paret v. La. Health Serv. & Indem. Co.*, 366 So.2d 634 (La.App. 3 Cir. 1978), *writ denied*, 369 So.2d 139 (La.1979). However, this fact does not relieve the insured of the initial burden of proving that his loss is occasioned by an event covered under the policy.

**CONCLUSION**

The Plaintiff in this case needed to prove, by a preponderance of the evidence, that his car had been damaged as a result of theft. The evidence presented by Mr. Ho in this case fell far short of meeting this standard. The uncontradicted evidence presented by State Farm, on the other hand, far outweighed the uncorroborated, self-serving claims of Mr. Ho. Accordingly, we find Mr. Ho's assertion of theft to be without merit and hold State Farm not liable for this claim. Because we hold that Mr. Ho's claim is not covered under Mr. Ho's policy of insurance with State Farm, we find it unnecessary to address State Farm's other assignments of error. All costs of this appeal are assessed to Mr. Dinh Ho.

8

**REVERSE**