# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-0349**


**BARRY RAFFLEE, SR., ET AL.**

**VERSUS**

**HURRICANE SPORTS, INC., ET AL.**


************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 64,451-D
HONORABLE WILLIAM D. HUNTER, DISTRICT JUDGE

************

**JIMMIE C. PETERS**
**JUDGE**

************

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.


**AFFIRMED.**

**Jason L. Melancon**
**Melancon | Rimes**
**8706 Jefferson Hwy., Suite B**
**Baton Rouge, LA 70809**
**(225) 303-0455**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    Barry Rafflee, Sr., et al.

**Frank Tomeny III**
**Tomeny & Fisher**
**6709 Perkins Road**
**Baton Rouge, LA 70808**
**(225) 767-8333**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    Barry Rafflee, Sr., et al.

**Thomas R. Hightower, Jr.**
**Wade Kee**
**A Professional Law Corporation**
**P. O. Drawer 51288**
**Lafayette, LA 70505**
**(337) 233-0555**
**COUNSEL FOR DEFENDANT /APPELLEE**
      **Shelter Mutual Insurance Company**

PETERS, J.

Barry Rafflee, Sr. and his wife, Linda S. Rafflee, brought suit, individually and on behalf of their two minor children, to recover damages they sustained as a result of a motorcycle accident involving Mr. Rafflee. Initially, they named a number of defendants in the litigation,[1] but this appeal involves only one: Shelter Mutual Insurance Company (Shelter Mutual). The Rafflees appeal a jury verdict finding that exclusions contained in the Shelter Mutual policy at issue excluded coverage for this incident. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The accident upon which this litigation is based occurred on November 12, 2000, at the Gravity Alley Motocross track in Breaux Bridge, Louisiana. Mr. Rafflee sustained significant injuries after being thrown over the handlebars of his motorcycle while attempting a jump on the track. Shelter Mutual was named as a defendant based on a homeowner's insurance policy it issued which purports to cover the Carencro, Louisiana family home of Chris Van Way, the owner and president of Van Way Investments, the owner/lessor of the property on which the motocross track is located.

The only issue presented to the jury at trial was that of insurance coverage under the Shelter Mutual policy. Prior to the beginning of trial, the litigants stipulated that Shelter Mutual provided homeowner's insurance coverage to Mr. Van Way and that it would be liable to the extent of its $300,000.00 policy limit unless the jury found that either one of two exclusions were found to apply. At the close of evidence, the jury returned a verdict finding that both exclusions applied, and,

---

[1]Named as defendants in this suit were Hurricane Sports, Inc. d/b/a Gravity Alley Motocross; Michael J. Shea, Jr.; Charles G. LeBlanc; Van Way Investments; J. P. Oil Company; J. P. Van Way, Sr.; Shirley Van Way; Chris Van Way; Evanston Insurance Company; American First Insurance Company; and Shelter Mutual Insurance Company.

therefore, Shelter Mutual had no liability to the Rafflees. In their appeal, the Rafflees raise two assignments of error:

A.   The jury was clearly wrong in finding that Barry Rafflee suffered bodily injury arising out of a premise owned, rented or controlled by Chris [Van Way].

B.   The jury was clearly wrong finding that Chris Van Way was engaged in a genuine business pursuit at the time of Barry Rafflee's accident.

## OPINION

The matter at issue involves the interpretation of an insurance policy. As insurance policies are contracts, they are interpreted pursuant to the rules of contract interpretation found in the Louisiana Civil Code. *Crabtree v. State Farm Ins. Co.*, 93-509 (La. 2/28/94), 632 So.2d 736. Interpreting a contract requires that the common intent of the parties be divined. La.Civ.Code art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. Words within a contract "must be given their generally prevailing meaning." La.Civ.Code art. 2047. However, if the words of a contract are susceptible of different meanings, we must interpret them in the manner that "best conforms to the object of the contract." La.Civ.Code art. 2048. A single provision of the insurance contract "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050. We are required to interpret a doubtful provision "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053. Additionally, where the doubt created by a contract provision

2

cannot be removed, we must interpret that provision against the party who furnished it. La.Civ.Code art. 2056.

The burden of proving that coverage exists under an insurance policy rests with the plaintiffs. *Ho v. State Farm Mut. Auto. Ins. Co.*, 03-480 (La.App. 3 Cir. 12/31/03), 862 So.2d 1278. Conversely, the burden of proving that coverage is excluded pursuant to the policy's terms rests with the insurer. *Tunstall v. Stierwald*, 01-1765 (La. 2/26/02), 809 So.2d 916.

The two exclusions at issue in this litigation are found in Section II of the Shelter Mutual policy. They provide that Shelter Mutual will not cover:

3. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured**. This exclusion does not apply:
   (a) to activities of the **insured** ordinarily incident to non-**business** pursuits.
   (b) with respect to coverage to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age.

4. **bodily injury** or **property damage** arising out of any premises owned, rented or controlled by an insured which is not an **insured premises**. But, **we** will cover **bodily injury** to any **residence employee** arising out of and in the course of employment by an **insured** at such premises.

The Shelter Mutual policy defines "insured premises" in eight different ways:

6. "**Insured premises**" means:
   (a) the residence premises;
   (b) any other premises acquired by you during the term of this policy which you intend to use as a residence premises;
   (c) the part of any other premises where you reside and which is shown in the Declarations;
   (d) any part of a premises not owned by an insured where the insured may be temporarily residing or which an insured may occasionally rent for non-business purposes;
   (e) vacant land, other than farmland, owned by or rented to an insured;

3

> (f)    cemetery plots or burial vaults owned by an insured;
>
> (g)    land on which a single or two family residence is being built for an insured, if the land is owned by or rented to the insured;
>
> (h)    any structures or grounds used by you in connection with our residence premises.

The jury verdict form presented the following two questions for the jury's deliberation:

Question No. 1

    Do you find that Shelter Mutual Insurance Company proved by a preponderance of the evidence that Chris Van Way was engaged in a business pursuit at the time of Barry Rafflee's accdent?

ANSWER:    YES _____NO _____

**Please check the appropriate answer.  If you answered "Yes," please have the jury foreperson sign the jury verdict form and request the bailiff.**

Question No. 2

    Do you find that Shelter Mutual Insurance Company proved by a preponderance of the evidence that Barry Rafflee suffered bodily injury arising out of a premise owned, rented or controlled by Chris Van Way which was not an insured premise?

ANSWER:    YES _____    NO _____

The jury answered the first question in the affirmative. However, rather than signing the verdict and requesting the bailiff, the jury proceeded to answer the second question in the affirmative as well. Neither party to the litigation made mention of this oversight when the jury reported its verdict to the trial court. Instead, the jury's verdict was accepted, and judgment was rendered in accordance with that verdict. Thus, the jury found that both exceptions applied.

In their first assignment of error, the Rafflees address the jury's response to the second question and address the jury's response to the first question in the second

assignment of error. Specifically, in their first assignment of error, they argue that there is no reasonable factual basis for the jury's affirmative answer to the second question as Mr. Van Way's testimony clearly established that he did not own, rent, or control the property on which the motocross track was located. Because we find no merit in the first assignment of error, we need not consider the second.

In considering the Rafflees' argument, we first note that there is no dispute but that Mr. Van Way is the named insured under Shelter Mutual's policy and that the property where the motocross track is located is not the insured premises under the policy. Additionally, the Rafflees do not seriously argue that Mr. Van Way owns or rents the motocross track property as the evidence establishes that the property is owned by Van Way Investments and leased by that corporation to Hurricane Sports, Inc., which does business as Gravity Alley Motocross. Thus, the remaining question concerning the application of the fourth exclusion in Shelter Mutual's policy involves whether Mr. Van Way maintains any control over the property.

With regard to control, the evidence establishes that Van Way Investments was incorporated on January 25, 2000, and that Mr. Van Way is the president, treasurer, director, incorporator, and sole shareholder of the corporation. The evidence further establishes that Van Way Investments acquired the property at issue from Mr. Van Way's parents on February 2, 2000, and entered into a lease with Hurricane Sports, Inc. on February 10, 2000. The lease agreement provided for a five-year term with a monthly rental of $500.00, with the first payment being due seven months after execution of the lease. As additional consideration, the lease provided that Hurricane Sports, Inc. would reimburse Van Way Investments $20,000.00 for costs of

5

improvements made to the property before the lease was entered into,[2] and would grant Mr. Van Way and his children the right to "use the track and facilities without charge for both practice and in racing events."[3] At all times during this litigation, the leased property was the only property owned by Van Way Investments.

With regard to the significance of the reservation of family rights under the lease, Mr. Van Way testified that his family involvement in motocross activities is extensive. His sons are aged seven, nine, eleven, thirteen, fifteen, and seventeen years respectively, and all participate in motocross racing. Mr. Van Way owned fifteen motorcycles at the time of trial and had owned as many as twenty in the past. He estimated that in 2000 and 2001, his sons raced almost every weekend of the year, and, in 2007, they were still racing ten to twelve weekends out of the year. The family travels to and from the races in a motor home of sufficient size to haul the motorcycles in an attached twenty-foot-long covered trailer. According to Mr. Van Way, the cost for his family's involvement in 2000 was approximately $50,000.00. Given the evidence presented, the jury obviously concluded that Mr. Van Way maintained significant control over the property.

As with all factual determinations of the jury, we review this factual determination under the manifest error/clearly wrong standard. Under that standard, in order to reverse the jury's factual determinations, an appellate court must review the record in its entirety and meet the following two-part test: (1) find that a reasonable factual basis does not exist for the finding, and (2) determine that the record establishes that the jury's finding is clearly wrong or manifestly erroneous.

---

[2]That amount was to be paid at the rate of $750.00 per month beginning one year after the execution of the lease.

[3]In his testimony, Mr. Van Way asserted that he was granted a reserved parking spot on the premises which he used free of charge, but the lease itself is silent on this issue.

6

*Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. This holds true even if the appellate court would have ruled differently had it been sitting as the court of first instance. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

In reviewing the evidentiary record, we conclude that the jury's obvious factual findings on this issue were not manifestly erroneous. While the property transactions flowed through a corporation, it was a corporation totally controlled by Mr. Van Way, and all of the concessions found in the lease agreement benefitted him and his family personally. The corporation was formed as a money making concern, but Mr. Van Way exerted his authority as the sole owner and officer of the corporation to refrain from enforcing the monetary terms of the lease for four years—a business decision which evidenced absolute control over the property. Thus, the jury heard sufficient evidence from which it could deduce that he in fact did have control over the track. Accordingly, we find no merit in this assignment of error.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in favor of Shelter Mutual Insurance Company dismissing the claims of the plaintiffs, Barry J. Rafflee, Sr., and Linda S. Rafflee, individually and on behalf of their two minor children. We assess all costs of this appeal to Barry J. Rafflee, Sr., and Linda S. Rafflee.

**AFFIRMED.**