PARRO, J.
|2The plaintiffs, Dr. Craig M. and Mrs. Shaun Landwehr, appeal a summary judgment granted by the trial court, which dismissed their claim against the defendant, American Safety Risk Retention Group, Inc. (American Safety), with preju: dice. For the reasons that follow, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The Landwehrs acquired the property known as Lot 4, Cypress Cove Place in Covington, Louisiana, in September 1998. Thereafter, on April 25, 2002, the Land-wehrs contracted with Steve Owens Construction, Inc. (Steve Owens) for the building of a home on this property. On that same date, Steve Owens and the Land-wehrs entered into separate pre-construction standard contracts for treatment of subterranean termites with DA Exterminating Co. of St. Tammany (DA Exterminating) for the residence under construction. The Landwehrs have renewed their contract for the treatment of subterranean termites with DA Exterminating every year since then.
The home was substantially completed, and the Landwehrs moved in, on April 14, 2003. From that time until early April 2010, the Landwehrs apparently did not notice any sign of the existence of termites or termite damage in the home. However, in April 2010, the Landwehrs noticed that a window sill in the keeping room of the home was damaged. When the repair technician came to the home to inspect the window on April 19, 2010, he advised the Landwehrs that he saw termites in the area.
After discovering the damage, the Land-wehrs notified both DA Exterminating and Steve Owens of the termite infestation damage, and both companies performed inspections of the home. Thereafter, Steve Owens began removing damaged sheetrock, wood insulation, and other debris caused by the termite infestation to the home; however, after several days, Steve Owens declined to perform further work without reimbursement. The Land-wehrs subsequently hired various additional contractors to inspect the home, and perform certain repairs, until it was determined by the contractors that the termite damage in the house was too extensive. In fact, the |shome eventually had to be torn down because the termite damage was allegedly so pervasive throughout the home that it could not be repaired.
Ultimately, the Landwehrs filed a petition against DA Exterminating and certain of its insurers, including American Safety, which provided commercial general liability (CGL) insurance to DA Exterminating for several years. "In the petition, the Landwehrs specifically alleged, with respect to DA Exterminating:
IV.
During construction, DA Exterminating was made aware of the existence of termites, as evidenced by a memo dated April 2, 2003, obtained from the files of DA Exterminating by plaintiffs. Such memo indicates the presence of termites at such date. A copy of such memo is attached hereto as Exhibit B; None of which information was afforded plain *676 tiffs.[1]
With regard to American Safety, the Landwehrs alleged that American Safety was the insurer for DA Exterminating when the Landwehrs and DA Exterminate ing first entered into their contract for the treatment of subterranean termites at the residence. Nevertheless, the petition acknowledged that a different insurer provided coverage to DA Exterminating at the timé the termites were discovered in April 2010.[2]
The Landwehrs subsequently filed an amended petition in this matter. However, this petition only served to further list the damages allegedly sustained by the Landwehrs and did not make any additional allegations of fact against DA Exterminating or American Safety.
American Safety responded to the petition by filing a motion for summary judgment, seeking dismissal of the Landwehrs’ claim against it. After a hearing, the trial court granted the motion for summary judgment and dismissed the Landwehrs’ claim against American -Safety, with prejudice. The Landwehrs have appealed.
^APPLICABLE LAW
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered In favor of the mover if the -pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
An appellate court’s review of a summary judgment is a de novo review based on the evidence presented to the trial court, using the same criteria used by the trial court in deciding whether a summary judgment should be granted. Buck’s Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431. In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable or material fact. All doubts should be resolved in the non-moving party’s favor. Hines v. Garrett, 04-0806 (La.6/25/04), 876 So.2d 764, 765.
On a motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the moving party’s burden on the motion is to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party *677 fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the moving, party is entitled to judgment as a matter of law. See LSA-C.C.P. art. 966(C)(2).
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth- in the Louisiana Civil 1 ¡¡Code. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless ’ the words have acquired a technical meaning. See LSA-C.C. art. 2047. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds, 634 So.2d at 1183. Where the language in the policy is clear, unambiguous, and expressive of the intent of the parties, the agreement must be enforced as written. See LSA-C.C. art. 2046; Lewis v. Jabbar, 08-1051 (La.App. 1st Cir.1/12/09), 5 So.3d 250, 255.
The purpose of liability insurance is to afford the insured protection for damage claims. Policies, therefore, should be construed to effect, and not to deny, coverage. Thus, a provision that seeks to narrow the insurer’s obligation is strictly construed against the insurer, and if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation that favors coverage must be applied. Reynolds, 634 So.2d at 1183. Nevertheless, subject to the above rules of interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Id. The rule of strict construction does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none, exists.. Nor does it authorize courts to alter the terms of policies under the guise of .contractual interpretation when the policy provisions are couched in unambiguous language. Doiron v. Louisiana Farm Bureau Mut. Ins. Co., 98-2818 (La.App. 1st Cir.2/18/00), 753 So.2d 357, 363.
DISCUSSION
This court must-'determine if a genuine issue of material fact remains as to whether any of. the American Safety policies was . triggered by an event of termite infestation or damage during their respective policy periods. The “trigger” of coverage |6is the event .or condition that determines whether a policy responds to a specific claim. Cole v. Celotex, 599 So.2d 1058, 1075 n. 50 (La.1992). The determination of when coverage for a loss is triggered by an event should, not be made without initial analysis of the policy language, as the policy expresses the parties’ mutual intent, and its language determines the operative conditions upon which the insurer’s obligation to indemnify the insured is based. Mangerchine v. Reaves, 10-1052 (La.App. 1st Cir.3/25/11), 63 So.3d 1049,1055.
It is undisputed that American Safety provided insurance coverage to DA Exterminating pursuant to four separate CGL policies that extended coverage in one-year intervals from November 8, 2003, to November 8, 2007. American Safety attached certified copies of the relevant insurance policies to the memorandum in support of its motion for summary judgment. The insuring agreement of. each of the policies provided, in pertinent part:
*678 SECTION I — COVERAGES
COVERAGE A. BODILY INJURY. AND ■ PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that any insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We . will have the right and duty to defend any “suit” seeking damages. But:
(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
(2) Our right and duty to defend end[s] when we have used up the applicable limit of insurance in the payment of judgments, or settlements under Coverages A or B or medical expenses under Coverage C, or ány other “claim related costs”.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS— COVERAGES A AND B.
b. This insurance applies to “bodily injury” and “property damage” only if: '
(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”, and
(2) The “bodily injury” or “property damage” occurs during the policy period.
The policy defines an !‘[o]ccurrence” to mean “an accident or the continuous or |7repeated exposure to substantially the same general harmful conditions.”[3] In addition, “[pjroperty damage” is defined by the policy[4] 'to mean:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the “occurrence” that caused it.
American Safety’s policies provided coverage for property damage only if it occurred during the policy period. The relevant policies were in effect continuously from November 8, 2003, to November 8, 2007; however, it is undisputed that no American Safety policy was in effect on April 19, 2010, when the Landwehrs first discovered the termite damage to their home. Nevertheless, the Landwehrs allege that, due to the pervasiveness of the infestation, the termites must have been in the home for a long time prior to the date of discovery, which they suggest indicates that some damage may have occurred during the effective periods of the American Safety policies. This argument is without merit.
Pursuant to the terms of thé .American Safety policies, in order for thé coverage provisions of the policies to be triggered, there must have been some physical injury to tangible property or loss of use of tangible property that is not physically injured, which occurred during the policy périod. After a thorough review of the record, it is clear that the first evidence of physical injury to, or loss of use of, tangible property came on April 19, 2010, which was out *679 side the American Safety policy periods. Under the clear terms of the policies, American Safety’s liability cannot be triggered by such property damage.
Nevertheless, the Landwehrs point to a memo that was found in the file of DA Exterminating, which indicated the existence of some termite activity as early as April 2, 2003, prior to the effective date of the first American Safety policy.[5] As discussed previously, this memo documented the existence of some-'termite tunnels in a wall of |Rthe home, but noted that the termite activity had stopped.- .The memo did not mention the existence of any current termite activity. Therefore, this memo does not provide any evidence to suggest there was any termite activity or property damage that occurred during one of the American Safety policy periods.
Finally, in their brief to this court and in the hearing on the motion for summary judgment before the trial court, the Landwehrs have made reference to a sec.-ond memo allegedly found in DA Exterminating’s files. According to the Land-wehrs, this second memo documents the .existence of swarming termites at the home in March 2007.[6] It is not clear whether the presence of swarming termites constitutes physical injury to the property within the meaning of the American Safety policies; however, it is not necessary that we resolve that question at this time, because the memo in question is not in the record before us.
The Landwehrs raised the issue of the memo in their argument.before the trial court, but the memo .was never introduced into evidence at the hearing.. Furthermore, if the Landwehrs filed a memorandum in opposition to the motion for summary judgment to which this memo was attached, it is not in the record before us.[7]
After a thorough de novo review of the record, we find that American Safety met its initial burden of proof to point out to the court,that there was .an absence of factual support for an element essential to the Landwehrs’ claim. See LSA-C.C.P. art. 966(C)(2). In seeking a declaration of coverage under an insurance policy, Louisiana law places the burden on the plaintiff to establish every fact essential to recovery and,to establish that the claim falls within, -the policy, coverage. Ho v. State Farm Mut. Auto Ins. Co., 03-0480 (La. App. 3rd Cir,12/31/03), 862 So.2d 1278, 1281, citing Pierce v. %65 Aetna Life and Cas. Ins. Co., 572 So.2d 221, 222 (La.App. 1st Cir.1990). American Safety pointed out that the Landwehrs could not prove that any termite damage had occurred to their home between November 8, 2003, and November 8, 2007, which was during *680 the American Safety policy periods. Once American Safety demonstrated this deficiency in the Landwehrs’ - case, the burden shifted to the Landwehrs to produce factual support sufficient to establish that they would be able to satisfy' their evidentiary burden of proof at trial. See LSA-C.C.P. art. 966(C)(2). Specifically, in this case, the Landwehrs had to prove, among other things, that physical injury had' occurred to their home within the policy periods. Since they were unable to- offer any evidence sufficient to establish that they would be able to prove this fact at trial, there is no genuine issue of material fact, and American Safety is entitled to’judgment as a matter of law. See Id. Accordingly,’ we find that summary judgment was properly granted in favor of American Safety.
DECREE
For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment filed by American Safety Risk Retention Group, Inc. is affirmed. All costs of this appeal are assessed to the plaintiffs, Dr. Craig M. and Mrs. Shaun Landwehr.
AFFIRMED.
WELCH J., concurs without reasons.
GUIDRY, J.., concurs in result without reasons.

1. The memo from DA Exterminating contained the-following notation concerning .the Landwehrs’ home: "FOUND TUNNELS — NO ' ACTIVITY])] HALFWAY UP CHAIN WALL-STOPPED.”

. According to the original petition, the Land-wehrs alleged that LIPCA, Inc. (LIPCA) had become the insurer for DA Exterminating by the time the termites were discovered in April 2010. However, the Landwehrs’ claim against LIPCA was ultimately dismissed pursuant to a judgment signed on September 27, 2011, which granted the peremptory exception pleading the objection of no cause of action filed by LIPCA. The Landwehrs subsequently filed a second amended and supplemental petition naming additional insurance companies that had allegedly provided coverage for DA Exterminating during the relevant time periods.

.' See SECTION V — DEFINITIONS, item 13.

. See SECTION V — DEFINITIONS, item 18.

. The first' American Safety policy had an effective period of November 8, 2003, to November 8, 2004. .

. March 2007 would have been within the final relevant American Safety policy period,

. As appellants, the Landwehrs initially designated the contents of the record; however, they failed to include the motion for summary judgment about which this appeal has been filed. Therefore, American Safety filed a motion to supplement the record with the motion for summary judgment, the attached memorandum in support, and American Safety's supplemental memorandum in .support. No memorandum in opposition was designated as part of the record on appeal.
At the hearing on the motion for summary judgment, counsel for the Landwehrs stated that he had received the memo about the swarming termites just a few weeks before the hearing and, for that; reason, he had been unable to present it to the court until the day of the hearing. Again, there is nothing to indicate that the memo was introduced into the record, and no memorandum in opposition is in the record before us.